# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REPUBLIC SERVICES OF
PENNSYLANIA, LLC,

*Plaintiff,*

v.

CARIBBEAN OPERATORS, LLC, *et al.,*

*Defendants.*

CIVIL ACTION
NO. 17-03908

**PAPPERT, J.** **March 14, 2018**

## MEMORANDUM

Republic Services of Pennsylvania, LLC sued Caribbean Operators, LLC, Caribbean Operators, Inc., Gomes Express, Inc. (collectively "Caribbean"), United Financial Casualty Company ("UFCC"), James B. Johnston, and Evanston Insurance Company seeking declaratory judgments against UFCC (Counts 1, 2) and Evanston (Count 10). (Compl., ECF No. 1.) Republic also alleges claims for bad faith against UFCC (Count 3), breach of contract against Caribbean (Counts 4 and 5) and negligent misrepresentation (Count 6), negligence (Count 7), breach of contract (Count 8) and breach of fiduciary duty (Count 9) against Johnston. UFCC filed a Motion to Dismiss Count 1 (UFCC Mot., ECF No. 14) and Johnston filed a Motion to Dismiss Counts 6–9 (Johnston Mot., ECF No. 25). On March 1, 2018, the Court heard oral argument on both motions. (ECF No. 37.) The Court grants UFCC's Motion (ECF No. 14) and grants in part and denies in part Johnston's Motion (ECF No. 25) for the reasons that follow. The case is stayed with respect to all remaining claims.

# I

## A

Republic, a waste disposal service, contracted with Caribbean to perform trash hauling services. (Compl., Ex. A.) On the morning of September 19, 2014, Roberto Jones, while in the course of his Caribbean employment, was transporting trash in a Caribbean owned 2001 tractor trailer with vehicle identification number 1FUJA6CGX1LJ39963 and an attached semi-trailer. (*Id.* at ¶¶ 26, 16–17.) While driving on Pennsylvania Route 340, Jones collided with a truck driven by Jacob Long. (*Id.* at ¶¶ 31, 36.) Long and two of his passengers, Marcus Ruff and another individual, died as a result of the accident. (*Id.* at ¶ 38.) Long and Ruff's estates brought separate lawsuits against Jones, Caribbean Operators, Gomes Express and Republic Services. The cases ("Underlying Action") were consolidated and are pending before the Court of Common Pleas of Lancaster County. (Compl. ¶ 15.)

## B

Republic and Caribbean's business venture was governed by a January 10, 2013 Master Transportation Services Agreement ("MTSA") which was in effect on the date of the accident. (Compl. ¶¶ 22–23.) The MTSA required Caribbean to obtain insurance coverage as outlined therein. (Compl. ¶¶ 25–31; MTSA ¶ 12, Compl., Ex. B.) Specifically, Caribbean was obligated to maintain automobile liability insurance with limits of at least $2,000,000 per accident and umbrella/excess liability insurance with limits of at least $2,000,000 per occurrence. (Compl. ¶¶ 26, 29; MTSA ¶ 12.1.) Caribbean agreed that all insurance policies would be primary without the right of contribution from other insurance maintained by Republic (Compl. ¶¶ 28, 31; MTSA ¶

12.2) and agreed to list Republic as an additional insured on each policy (Compl. ¶¶ 27, 30; MTSA ¶ 12.2).

Caribbean retained Johnston, an insurance broker, to place its insurance policies. (Compl. ¶ 47.) Caribbean informed Johnston about the MTSA requirements (Compl. ¶¶ 48–49) and relied on Johnston to obtain policies in accordance with those requirements (Compl. ¶ 50). UFCC subsequently issued two policies to Caribbean: policy number 03079347-0 (Policy 1, Compl., Ex. C) and policy number 05281021-5 (Policy 2, Compl. Ex. D). UFCC issued one policy to Gomes: policy number 07651616-3 (Policy 3, Compl. Ex. E). (Compl. ¶¶ 32–35.) Each UFCC policy was in effect during September 2014 and provided for a combined single limit of $1,000,000 per accident. (*Id.*) Further, each UFCC policy provided:

> We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. We have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.
> . . .
> In addition to our Limit of Liability, we will pay for an insured:
>
> 1. all expenses that we incur in the settlement of any claim or defense of any lawsuit.

(Policy 1, at 6–8; Policy 2, at 6–8; Policy 3, at 6–8.) None of the UFCC policies explicitly list Republic as an "additional insured" (Policy 1, Policy 2, Policy 3), and only Policy 3 expressly includes the 2001 tractor trailer on its auto coverage schedule (Policy 3).

Johnston also helped Caribbean place its umbrella/excess policy with Associated International. The Associated Policy, number XOBW4307213, was also in effect in September 2014 and provides coverage up to $1,000,000 per

occurrence.  (Compl. ¶¶ 43–44.)  Evanston assumed all rights and obligations under this policy through its merger with Associated International.  (Compl. ¶¶ 46, 11.)

## C

Republic acknowledges that UFCC is currently providing a defense to Republic in the Underlying Action "under one or more of the UFCC Policies" subject to a reservation of rights (Compl. ¶ 42; UFCC Mot. at 3 n.1)  and no judgment has been entered against Republic (Hr'g Tr. 43:2-7).  Notwithstanding these facts, Republic now seeks largely to have the Court provide Republic with more "certainty" that UFCC will continue to do that which it is already doing—defend Republic.  (ECF No. 1.)  UFCC moves to dismiss Count 1 for lack of subject matter jurisdiction under Rule 12(b)(1) and in the alternative, for failure to state a claim under Rule 12(b)(6).  (UFCC Mot. at 4–9.)  Johnston moves to dismiss Counts 6–9 for lack of subject matter jurisdiction under Rule 12(b)(1) and, also in the alternative, for failure to state a claim under Rule 12(b)(6).  (Johnston Mot. at 11–28.)  Republic filed a Response in Opposition to both motions.  (Opp. to UFCC, ECF No. 20; Opp. to Johnston, ECF No. 29.)

## II

A party's Rule 12(b)(1) motion "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) *modified*, *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (referencing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  When, as here, presented with a facial attack, the Court "must only consider the allegations of the complaint and documents referenced therein and

attached thereto, in the light most favorable to the plaintiff." *Id.* The plaintiff bears the burden of showing that the action is properly in federal court. *Samuel-Basset v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the complaint will survive defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

UFCC moves for dismissal of Count 1 pursuant to Rule 12(b)(1) arguing that

Republic's Complaint presents no case or controversy for the Court to decide.  (UFCC

Mot. at 6–7.)  In Count 1, Republic seeks:

> (1) A declaration that UFCC has a duty under the UFCC Policies to defend Republic in the Underlying Action;

> (2) A declaration that UFCC has a duty under the UFCC Policies to indemnify Republic in the Underlying Action;

> (3) A declaration that the UFCC Policies are required to respond to indemnify Republic in the Underlying Action until exhaustion of the limit of liability of each of the UFCC Policies; and

> (4) Such other and further relief, as the Court may deem appropriate.

(Compl. ¶ 61(1)–(4).)

## A

"The existence of a case or controversy is a prerequisite to all federal actions…."

*Am. States Ins. Co. v. Component Technologies, Inc.,* 420 F. Supp. 2d 373, 374 (M.D. Pa.

2005) (citing *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)).  "Ripeness is a

question of timing and its basic rationale is to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements."  *Am.

States Ins. Co.*, 420 F. Supp. 2d at 374.  It is difficult to define "ripeness in the context

of declaratory judgment actions."  *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d

643, 646 (3d Cir. 1990).  The Declaratory Judgment Act provides, in part, that "[i]n a

case of actual controversy within its jurisdiction, . . . any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other legal

---

[1]    The parties agree that Pennsylvania law applies to the UFCC Policies and all claims in the litigation.  (Hr'g Tr. 8:5-21.)

relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

Declaratory judgment actions are often brought "before 'accomplished' injury can be established" thus, there is some tension with the concept of ripeness. *Step-Saver Data Sys.,* 912 F.2d at 647.

Under Pennsylvania law, the duty to defend is distinct from, and broader than, the duty to indemnify. *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing *Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). The duty to defend arises when a complaint filed by an injured party may potentially come within the policy's coverage. *Id.* The duty to indemnify "arises only when the insured is determined to be liable for damages within the coverage of the policy." *Id.*

i

Republic alleges that UFCC is *currently defending* it in the Underlying Action "under one or more of the UFCC Policies," albeit subject to a reservation of rights.[2] (Compl. ¶ 42.) At oral argument, Republic's counsel acknowledged that "it sounds like [UFCC will] continue to [provide a defense]." (Hr'g Tr. 21:10-13.) Republic nonetheless seeks a declaration regarding UFCC's duty because it wishes to "resolve that uncertainty of whether [UFCC] will continue to defend" (*id.* 7:18-20) and because it wants to "confirm" that UFCC will continue to provide a defense (*id.* 25:8-12). Without any allegation that there is even an actual (much less an "abstract") disagreement between Republic and UFCC, attempting to ease Republic's uncertainty would contravene the spirit and letter of the ripeness doctrine.

---

[2]     A defense subject to a reservation of rights means that an insurer agrees to defend "but reserves all rights it has based on noncoverage under the policy." Couch on Ins. § 202:38.

Subsequent to oral argument, Republic augmented its briefing with a list of cases that it claims support its position that an insured's action for declaratory judgment is ripe even though the insurer is providing a defense under a reservation of rights. (Hr'g Tr. 28:3-15.) The cases do not help Republic. In four of them, the insurer sought the declaration that it had no duty to defend the insured. *See Evanston Ins. Co. v. Layne Thomas Builders, Inc.,* 635 F. Supp. 2d 348, 350 (D. Del. 2009); *Nationwide Prop. & Cas. Ins. Co. v. Shearer*, 650 F. App'x 115, 116 (3d Cir. 2016); *Westfield Ins. Co. v. Holland*, No. 07-5496, 2008 WL 5378267, at *1 (E.D. Pa. Dec. 19, 2008); *State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.,* No. 14-03987, 2015 WL 894419, at *1 (E.D. Pa. Mar. 3, 2015). In two of those, the insurers also had previously disclaimed coverage at some point prior to filing the action. *See Evanston Ins. Co.*, 635 F. Supp. 2d 348; *Nationwide Prop. & Cas. Ins. Co.,* 650 F. App'x 115. The two cases that Republic cites where insureds filed the declaratory judgment actions are inapposite. In *Devcon Int'l Corp. v. Reliance Ins. Co.*, 609 F.3d 214 (3d Cir. 2010), the insurer was providing a defense subject to a reservation of rights but affirmatively stated that it was "questionable" whether they had a duty to defend because of a specific policy exclusion. In *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223 (3d Cir. 2010), the insured filed the action after the insurer refused to pay for expenses that the insured incurred while defending itself prior to the insurer's representation.

In contrast, in *American States Insurance Company v. Component Technologies, Inc.*, the court dismissed the plaintiff's claim seeking a declaratory judgment regarding the insurer's duty to defend. 420 F. Supp. 2d 373, 374 (M.D. Pa. 2005). The insurer, like UFCC here, was willingly providing a defense in the underlying litigation while the

declaratory judgment claim was pending and the court dismissed the claim for that reason. *Id.* at 376.

ii

The question of whether an insurer has a duty to indemnify is not ripe until there is an actual need for indemnification, that is, until liability has been determined in the underlying action. *Knightbrook Ins. Co. v. DNA Ambulance, Inc.*, No. 13-2961, 2013 WL 12145016, at *6 (E.D. Pa. Oct. 2, 2013); *Am. States Ins. Co.*, 420 F. Supp. 2d at 374. Liability has not been established in the Underlying Action; therefore Republic's request for a declaration that UFCC has a duty to indemnify it for liability in the Underlying Action is not ripe.[3]

IV

Johnston moves for dismissal of Counts 6–9 pursuant to Rule 12(b)(1) for lack of standing and in the alternative pursuant to Rule 12(b)(6).

A

A defendant may also move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) for lack of standing under Article III of the Constitution. *Enslin v. The Coca-Cola Company*, 136 F. Supp. 3d 654 (E.D. Pa. 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). Federal courts have limited jurisdiction and may only decide "actual cases and controversies." To establish Article III standing, a plaintiff must establish: (1) it suffered an injury-in-fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v.*

---

[3]    Republic conceded at oral argument that any declaration regarding the duty to indemnify is premature at this point. (Hr'g Tr. 20:18–23.)

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish an injury-in-fact, a plaintiff must show that the injury was concrete and particularized and actual or imminent—not hypothetical. *Id.* at 560–61. For a future harm to constitute an injury-in-fact, it must be "certainly impending." *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1147–48 (2013).

Johnston argues with respect to each claim against him that Republic has not alleged an injury-in-fact because there has been no judgment entered in the Underlying Action and Republic is currently being afforded a defense in that lawsuit. (Johnston Mot. at 12-13.) Johnston further contends that Republic's purported damages are speculative because a jury could find in favor of Republic at trial or it could find that the damages do not exceed the $2,000,000 in insurance coverage already available to it. (*Id.*)

i

Republic lacks standing to assert claims against Johnston for negligent misrepresentation (Count 6), negligence (Count 7), and breach of fiduciary duty (Count 9) because it cannot show an injury-in-fact or that "it is likely, as opposed to speculative, that [any] injury will be redressed by a favorable decision." Economic injury is the most common injury-in-fact. *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005). Republic has not sustained any. Republic has not alleged non-economic harm either. Even if it was able to do so, such harm could not be redressed by a favorable decision. Judgment for Republic on any of these claims would not redress an alleged injury because it would only permit Republic to recover pecuniary losses—not nominal damages. *See Merrill Iron & Steel, Inc. v. Blaine Const.*

*Corp.*, No. 14-221, 2014 WL 2993774, at *7 (W.D. Pa. July 2, 2014) (citing RST (Second) of Torts § 552B) (damages recoverable for negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause); Couch on Ins. § 46:42 ("An agent or broker is not liable to an insured for failing to procure insurance when…[the failure] caused no damage or loss."); *Oetting v. Heffler*, No. 11-4757, 2015 WL 9190629, at *6 (E.D. Pa. Dec. 17, 2015) (a plaintiff must prove actual damages to recover on a claim for breach of fiduciary duty). Republic has not suffered any pecuniary losses as a result of Johnston's alleged negligent conduct or breach of fiduciary duty because there has been no judgment entered against it in the Underlying Action.

ii

Republic also asserts a claim for breach of contract against Johnston (Count 8). It argues that Johnston failed to obtain insurance with the coverage limits required in the MTSA between Caribbean and Republic. In contrast to Counts 6, 7 and 9, Republic could recover nominal damages if it prevailed on the breach of contract claim. *See Fishkin v. Susquehanna Partners, G.P.,* 563 F.Supp.2d 547, 591 (E.D.Pa.2008) ("Pennsylvania law allows nominal damages for a breach of contract claim."); *Scobell, Inc. v. Schade,* 455 Pa.Super. 414, 688 A.2d 715, 719 (Pa.Super.Ct.1997) ("[A]ny breach of contract entitles the injured party to at least nominal damages."). Further, the potential award of nominal damages alone is sufficient to establish standing. *See Murphy v. Bank of America*, N.A. No. 13-5719, 2016 WL 1020969, at *4 n.6 (E.D. Pa. Mar. 14, 2016) (defendant contended damages were too speculative but court determined that the breach of contract alone and ability to recover nominal damages

was sufficient for the claim to survive).[4]  The Court will thus address this claim's sufficiency under Rule 12(b)(6).

B

i

To state a claim for breach of contract, a plaintiff must establish: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damages.  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).  Generally, to bring a claim for breach of contract, the plaintiff must be a party to the agreement.  *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991).  An exception to this general rule grants intended third party beneficiaries standing to pursue a breach of contract claim.  *Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983).  For a third party beneficiary to recover on a contract, "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself."  *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992).  In *Scarpitti*, however, the court also explained that if the intention is not expressly stated in the contract, a party may still be considered a third party beneficiary if:

> [T]he circumstances are *so compelling* that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti*, 609 A.2d at 150–51 (citations omitted) (emphasis added).

---

[4]     In *Freedom from Religion Foundation Inc. v. New Kensington Arnold School District*, 832 F.3d 469, 480 n.12 (3d Cir. 2016), the Third Circuit held that a plaintiff seeking nominal damages for a past harm had standing.  *But see id.* at 482, 491–92 (Smith, J., concurring) (expressing skepticism that nominal damages alone would suffice to create standing).

Republic alleges that Caribbean made Johnston aware of the insurance coverage requirements set out in the MTSA. (Compl. ¶¶ 48–49.) Further, "Johnston entered into an oral or written contract" with Caribbean, pursuant to which Johnston assumed several duties, including obtaining insurance coverage for Caribbean and its clients and ensuring that the coverage was sufficient to meet the contractual obligations that Caribbean owed Republic. (Compl. ¶ 137.) Republic makes a conclusory allegation that "Johnston and Caribbean intended to benefit those persons…to whom Caribbean owed a contractual obligation…." (Compl. ¶ 138; *see also id.* ¶¶ 139–40.) Unlike many other cases where an alleged intended third party beneficiary asserts a breach of contract claim, the Court has not seen (to the extent it was written) the contract between Caribbean and Johnston and cannot determine whether or not both parties intended for Republic to be a third party beneficiary.[5] Republic therefore must show that the circumstances are "so compelling" that it should be recognized as a third party beneficiary of the purported contract between Caribbean and Johnston.

Republic relies on *Scarpitti* in its effort to do so. In that case the Scarpittis bought a residential lot from the developer. At the time of the purchase, the lot was subject to specific deed restrictions, including one that limited all single family dwellings to, at most, two and a half car attached garages. *Scarpitti*, 609 A.2d at 149. The purchasers' construction plans were required to be approved by an architect with whom the developer had contracted to ensure uniformity within the development. The Scarpittis plans for a three car garage were disapproved by the architect who subsequently however approved plans with three car garages for other lot owners. *Id.*

---

[5]     *See Mylan, Inc. v. Zorich*, 14-cv-80, 2012 WL 527662 (W.D. Pa. Feb. 16, 2012); *Brandow Chrysler Jeep Co. v. DataScan Technologies*, 511 F. Supp. 2d 529 (E.D. Pa. 2007); *Villanova, LTD v. Convergys*, 01-1213, 2001 WL 868662 (E.D. Pa. Apr. 24, 2001).

The Scarpittis sued the architect, contending that they were intended third party beneficiaries of the contract between the developer and architect. The trial court disagreed and dismissed their complaint.

The Superior Court reversed and the Supreme Court of Pennsylvania affirmed the reversal, concluding that the purpose of the contract between the developer and architect was "to make the lots more attractive to prospective purchasers by assuring that other homeowners in the subdivision would be required to abide by the recoded subdivision restrictions." *Id.* at 151. The lot purchasers' third party beneficiary relationship was accordingly "within the contemplation" of the developer and architect when they contracted and it was reasonable for purchasers like the Scarpittis to rely upon the implied promise that the deed restrictions would be uniformly enforced. *Id.*

In *Scarpitti*, the contract's purpose was to benefit prospective buyers of the lots; this made recognition of those purchasers' rights under that contract "compelling." By contrast, the purpose of the contract between Caribbean and Johnston was not to benefit Republic to any extent that the circumstances compel recognizing Republic as a third party beneficiary. In its brief, Republic does no more than summarize *Scarpitti*, claim that it has "alleged enough facts to show that it is an intended third party beneficiary" and restate that Caribbean relied on Johnston to place its insurance coverage. (Opp. to Johnston, 14–16.) Republic does not provide any reason or factual support as to why its situation is "so compelling" to warrant its status as a third party beneficiary nor does the Court find one.

This case is also unlike *Caciolo v. Masco Contractor Services East, Inc.*, No. 04-962, 2004 WL 2677170 (E.D. Pa. Nov. 22, 2004). There, Anthony and Penny Caciolo

contracted with Monogram Custom Homes, of which Anthony was president, to build their home. Monogram then contracted with Masco Contractor Services for the sale and installation of a vent, chimney and firestop. After a fire damaged the home, the Caciolos sued Masco for the faulty installation. Although the Caciolos never contracted with Masco, they claimed to be intended third party beneficiaries of Monogram and Masco's contract. The Caciolos contended that because Anthony was both the owner of the home and Monogram's president when Monogram contracted with Masco, it created circumstances "so compelling that the recognition of [the Caciolos] right is appropriate to effectuate the intention of the parties." *Id.* at *3. Such is not the case here. Republic had no relationship with Johnston like Anthony Caciolo, as Monogram's president, did with Masco, nor did Republic enter into the MTSA with Caribbean with the understanding that Caribbean would contract with Johnston for Republic's benefit.

Republic's breach of contract claim against Johnston is dismissed accordingly. Republic will be allowed to amend its complaint with respect to this claim within 14 days of the case's removal from civil suspense.

## V

Republic asserts a claim against Evanston for declaratory judgment in Count 10. (Compl. ¶¶ 159–65.) Republic alleges that the "Associated Policy will be required to respond to defend Republic in the Underlying Action" (*id.* ¶ 161) and that the "Associated Policy will be required to respond to indemnify Republic in the Underlying Action [upon exhaustion of the limit of liability of the UFCC Policies]" (*id.* ¶ 162). The parties subsequently stipulated that the policy does not provide for a duty to defend. (Stipulation, ECF No. 32.) As explained *supra* Section III(A)(ii), an action asking a

court to determine an insurer's duty to indemnify is not ripe until liability has been determined in the Underlying Action. Liability has not been established in the Underlying Action and Republic's request is not ripe.

VI

Count 1 against UFCC, Counts 6–9 against Johnston and Count 10 against Evanston are dismissed without prejudice. Counts 2 and 3 against UFCC and Counts 4 and 5 against Caribbean for breach of contract remain. The Court will stay the proceedings in this case on those remaining counts. District courts have "broad discretion to stay proceedings as an incident to its power to control its own docket." *Allstate Ins. Co. v. Cooper*, No. 07-00974, 2008 WL 1990785, at *2 (W.D. Pa. May 7, 2008) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). Staying the proceedings in this case will not prejudice the remaining parties. Counsel for Caribbean supports this course of action. (Hr'g Tr. 63:2-10.) While counsel for Republic indicated his client's desire to move forward with the remnants of the litigation should the Court grant UFCC and Johnston's motions, he could not articulate a persuasive reason why the Court should do so. He explained that there are a lot of issues in the case and Republic is "looking to sort out…as many of them as they can." (Hr'g Tr. 65:5-17.) In fact, a resolution in Republic's favor on its claims against Caribbean would only entitle it to nominal damages before the Underlying Action's resolution, something that makes little sense. Additionally, staying the case will preserve judicial resources. Litigating the remaining claims against UFCC now while resolving (in Republic's view the more pressing) claims against Caribbean later would result in piecemeal litigation which would not entitle Republic, even if successful, to obtain the money it seeks.

An appropriate Order follows.

BY THE COURT:

**_/s/ Gerald J. Pappert_**
GERALD J. PAPPERT, J.